

Eastern District of Kentucky
FILED

JUL 1 9 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-347-GWU

JUDY BROWN,                                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,              DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Disability Insurance Benefits (DIB).  The appeal is

currently before the Court on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled.  If no, proceed to Step 2.
     See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
     claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities?  If yes, proceed to
     Step 4.  If no, the claimant is not disabled.  See 20 C.F.R.
     404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

Brown

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Brown

One of the residual functional capacity levels used in the guidelines, called

"light" level work, involves lifting no more than twenty pounds at a time with frequent

lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most

of the time with some pushing and pulling of arm or leg controls; by definition, a

person capable of this level of activity must have the ability to do substantially all

these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the

capacity to lift no more than ten pounds at a time and occasionally lift or carry small

articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a),

416.967(a).

However, when a claimant suffers from an impairment "that significantly

diminishes his capacity to work, but does not manifest itself as a limitation on

strength, for example, where a claimant suffers from a mental illness . . .

manipulative restrictions . . . or heightened sensitivity to environmental contaminants

. . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan,

905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the

Commissioner may still use the rules as a framework for decision-making, 20 C.F.R.

Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term

"framework" in the text of the decision is insufficient, if a fair reading of the record

reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency

6

Brown

may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.   <u>Varley   v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The   administrative   law   judge   (ALJ)   found   that   Brown   suffered   from degenerative disc disease of the lumbar spine, osteoarthritis of the knees, a history of depression, and a history of a right rotator cuff injury. (Tr. 21).  She determined that, despite these impairments, the plaintiff was able to perform a limited range of light level work and, therefore, was able to return to her past relevant work as a jewelry department manager, cashier, office clerk, referral coordinator and office clerk. (Id.).

The ALJ based her findings on the testimony of a vocational expert, James Miller.   Miller indicated that the jewelry department manager job Brown had had in the past had been light and skilled, the cashier and office clerk positions had been light and semiskilled, and the referral coordinator job would have been characterized as sedentary and skilled. (Tr. 277).  According to the expert, a person who was restricted to no more than light level exertion with a "limited but satisfactory" ability

7

to deal with the public, maintain attention and concentration, complete a normal workweek, and respond appropriately to changes in the work setting would be able to return to the previous work. (Tr. 278).

Miller had indicated that the physical restrictions noted by Treating Physician Kishore Jadhav[1] would render the plaintiff incapable of full-time work (Tr. 279), and also that more extensive ("seriously limited but not precluded") mental restrictions with regard to attention, concentration, dealing with work stress, and emotional instability would also render the plaintiff unable to do any work (Tr. 278). The ALJ ultimately did not rely on either set of these more serious limitations, both of which the plaintiff argues was reversible error.

Dr. Jadhav's residual physical function capacity opinion was rejected by the ALJ as not being supported by his treatment notes or diagnostic studies, but instead being based on patient history. (Tr. 16). A review of the administrative transcript shows that Jadhav indicated as his only commentary on the form assessment in question that the plaintiff could not engage in full-time work and had total environmental restrictions based on "neck, low back pain, and hip pain with progressive functional decline" and that she had "abnormal exam and MRI imaging studies." (Tr. 142). The progress notes accompanying the form indicate that the

---

[1]Since the medical clinic where the doctor practiced was the "Kishore Internal Medicine " (e.g., Tr. 223), one might assume that the doctor's surname was Kishore. However, his name is written as "Kishore Jadhav." (E.g., Tr. 216).

8

doctor proposed to obtain an MRI of the cervical spine as well as a nerve conduction study of both wrists in 2002 (Tr. 144), but there was no evidence of record that either study was actually performed. Moreover, the record indicated that the treating source saw the patient only once in 2003 prior to the completion of the assessment form. Thus, there were multiple internal reasons for discounting the treating source's opinion.

In contrast, also, Consultative Physical Examiner Jules Barefoot noted that there were no restrictions in the range of motion related to the plaintiff's spine or extremities, including her shoulder, and that the patient was able to sit, stand, move about, lift, carry and handle objects adequately and that there was no reproducible fatigue of motor function with repetitive activity (Tr. 132-133), suggesting that such activity could be performed repetitively. He did not complete any residual functional capacity assessment form, but a medical reviewer indicated that Barefoot's information suggested "less than severe" status. (Tr. 174).

More significantly, it does not appear that the plaintiff has established that her past work specifically involved the activities which Jadhav alone addressed (e.g., driving automotive equipment, exposure to environmental irritants). Given that it was the plaintiff's burden to establish an inability to return to past relevant work, this was her responsibility.

The plaintiff's pain was properly assessed by the ALJ for the reasons recounted in the defendant's brief, at pp. 11-15.

9

The assessment of the plaintiff's mental condition was also adequate.

While Pamela Starkey gave a pessimistic assessment of the plaintiff's mental condition (Tr. 127), she was simply a one-time examiner and some of the restrictions she noted would appear to have been contradicted by information from a treating source. A treating psychiatrist at the Cumberland River Comprehensive Care Center cited a higher GAF of 60 (at the moderate, almost mild, symptom level) in December, 2002 and December, 2003 (Tr. 151-165); he described the plaintiff in the December, 2002 progress note (slightly before the alleged onset date) as alert, oriented, neat, well groomed, able to smile occasionally, able to make good eye contact and exhibit normal mood and speech, possessing good insight, *and having unremarkable memory and cognition despite her complaints of "not remembering things."* (Tr. 164-165). She ceased counseling for a time. After the situational problem when the plaintiff's husband left her in mid-2004, and she returned for counseling, her GAF score assigned by the psychiatrist was lowered to 55 (Tr. 242, 246); still, the plaintiff was described as alert, oriented, of average intelligence, unremarkable memory, cooperative, compliant and able to make good eye contact (Tr. 245). The therapist giving the most recent treatment saw her as oriented, *alert and attentive* with adequate memory and insight, clear speech, and normal psychomotor activity. (Tr. 227, 229, 231, 241). Other records from the clinic indicate that the patient was seen as being disabled by physical (rather than mental) problems (Tr. 244) and that she was seen as stable (Tr. 227, 230, 231, 232, 241,

10

Brown

243) and reliable (Tr. 229, 231, 241, 255,260).  This information would at least suggest that the plaintiff's ability to maintain attention and concentration and demonstrate emotional stability were not at the "seriously limited" level which was suggested by the alternative hypothetical question given to the vocational expert and by which the plaintiff was said to be unable to perform her past work.

The decision will be affirmed.

This the ___19___ day of July, 2006.

G. WIX UNTHANK
SENIOR JUDGE

11